Quinlan, J.
The plaintiff in this case, John G. Andreucci (“Andreucci”) filed a seven-count amended complaint alleging that the defendants, Frederick F. Foresteire (“Foresteire”), Leader Publishing Co., Inc. and Joseph Curnane defamed him, engaged in a conspiracy to defame him, invaded his privacy and intentionally and negligently inflicted emotional distress upon him in various articles published in the Everett Advocate.[2]
*41 Foresteire has filed this motion for summary judgment stating that there are no genuine issues of material fact and that the case may be decided as a matter of law.
For the following reasons, Foresteire’s motion is DENIED.
BACKGROUND
The undisputed facts in this case are summarized as follows. The plaintiff, John G. Andreucci, retired from his position as a principal of the Lafayette School in the Everett School system on or about June 30, 1992. Andreucci had requested that his resignation be extended for six months so that he could take advantage of better pension benefits. The Everett School Board met to consider his request. At this meeting, statements were made with, regard to Andreucci’s performance as a principal and his request was subsequently denied. Andreucci did not make any response to these allegations.
Shortly after Andreucci’s resignation, a series of articles and editorials were published in the Everett Advocate CAdvocate") criticizing various members of the Everett School Board, Foresteire, and the replacement principal of the Lafayette School. In response to these articles, in October of 1995, Foresteire filed a defamation suit against James David Mitchell and The Advocate Newspaper, Inc. Shortly after filing this suit, on October 19, 1995, Foresteire caused to be published in the Everett Leader-Herald CHerald!’) an article which discussed the suit and his reasons behind its filing. The article was entitled, “Supt. Foresteire sues Mitchells and Advocate for Libel.” The article specifically named Andreucci as being involved in the publication of the articles in the Advocate. In the article, Foresteire stated that he intended to subpoena Andreucci in order to question him about his role in the publication of the articles in the Advocate. The article also criticized Andreucci’s performance as a principal including in those criticisms the allegations which were made at the Everett School Board hearing regarding Andreucci’s retirement. (See Pi’s Amended Complaint for a list of the statements which are allegedly defamatory.)
The statements made in those articles which were published in the Herald are the subject of Andreucci’s amended complaint.
DISCUSSION
I. SUMMARY JUDGMENT STANDARD
Summary Judgment shall be granted when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that he or she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When the party moving for summary judgment is the defendant, this burden may be met by either submitting affirmative evidence that negates an essential element of the plaintiff’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party demonstrates the absence of a triable issue, the party opposing the motion must respond and allege specific facts which establish the existence of a material issue of fact in order to defeat the motion. Pederson v. Time, Inc., supra at 17.
II. FORESTEIRE’S CLAIM THAT THE STATEMENTS IN QUESTION WERE NOT DEFAMATORY AS A MATTER OF LAW
Foresteire asserts that the allegedly defamatory statements are opinion and not fact. For that reason, Foresteire claims that the statements are not defamatory as a matter of law, and therefore summary judgment is appropriate for Count I of the amended complaint.
A statement found to be purely opinion cannot by definition be defamatory. Cole v. Westinghouse Broadcasting Co., Inc., 386 Mass. 303, 309 (1982) (statements that the plaintiff was fired due to “sloppy and irresponsible reporting” and a “history of bad reporting techniques” were opinion and therefore were not defamatory). To determine whether a statement is fact or opinion, it must be determined if the statement can be proven either true or false. Factual statements can be proven either true or false, whereas opinions cannot. Id. at 309. It is also important to look at the statements in the context in which they are made. Statements may be opinion in one context and fact in another. See Lyons v. Globe Newspaper Co., 415 Mass. 258, 265 (1993) (statements by newspaper regarding the purpose of a picket at an electoral convention was opinion; the statements were prefaced by the word “apparently” which let the reader know that the statements were not based on fact); Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 338-40 (1980) (statement in a satirical article that a sports announcer was “enrolled in a course for remedial speaking” was found to be a statement of opinion and not of fact when taken in context); Disend v. Meadowbrook School, 33 Mass.App.Ct. 674, 676 (1992) (a letter to students’ parents discussing the dismissal of the teacher was fact and not opinion). A statement may also be “mixed” opinion. “Mixed” opinion occurs when a statement is based upon facts which have not been either stated by the defendant or assumed by the parties. Pritsker v. Brudnoy, 389 Mass. 776, 778 *42 (1983) citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974).
“The determination whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either fact or opinion . . . However, if a statement is susceptible of being read by a reasonable person as either a factual statement or an opinion, it is for the jury to determine.” Aldoupolis v. Globe Newspapers, 398 Mass. 731, 733-34 (1986) citing Myers v. Boston Magazine Co., supra at 339-40. “ ‘[M]ixed’ opinion is actionable ‘if the comment is reasonably understood as implying the assertion of the existence of undisclosed facts about the plaintiff that must be defamatory in character in order to justify the opinion.’ ” Pritsker v. Brudnoy, supra at 778 quoting Gertz v. Robert Welch, Inc. supra at 339-40. Simply stated, if the statements are determined to be opinion, then summary judgment on the issues is appropriate. However, if the statements are determined to be factual, if it is ambiguous whether they are fact or opinion, or if they are considered “mixed” opinion then the case must be determined by a trier of fact.
In this case, Andreucci has countered Foresteire’s allegations with nineteen examples which he identified in his amended complaint as being defamatory. Many of these statements maybe interpreted as either being statements of fact, statements of opinion or may be considered “mixed” opinion.
For example, Andreucci in his amended complaint states that the following statements are defamatory:
We want to know how much money Andreucci has invested to keep Mitchell’s paper going when everyone in Revere and Everett knows that he is penniless,
The late George Kelley also voted against him, and Andreucci, never one to forgive easily, is continuing his feud with Kelley’s widow, Judy and with me.
Foresteire claims that these statements are opinion. Depending upon how these statements are interpreted in the context in which they are written, they may either be statements of fact, opinion or “mixed” opinion. As such, the defamatory nature of these statements is a disputed issue of material fact.
III. THE CLAIM BY FORESTEIRE THAT ANDREUCCI’S REPUTATION WAS NOT AFFECTED BY THE STATEMENTS
Foresteire alleges that Andreucci’s reputation was not harmed by the allegedly defamatory statements. For that reason, Foresteire argues that summary judgment is appropriate.
“A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.” Restatement (Second) of Torts §558 (1976). It is not necessary in a defamation action for Andreucci to prove actual harm to the reputation. Sharratt v. Housing Innovations, Inc., 310 N.E.2d 343, 348 (1974). By definition, if a statement is defamatory, then it has harmed a person’s reputation. In a defamation action, the natural consequences of the false statement are assumed, including damage to reputation and mental anguish. “The general damages recoverable in a defamation action are those naturally and necessarily flowing from the wrong.” Id. at 348. Whether Andreucci’s reputation has been harmed is part of the jury’s determination as to whether defamation has occurred. For this reason, the issue of damages to Andreucci’s reputation is a material issue of fact to be determined by the trier of fact and not by the court on summary judgment.
IV. THE CLAIM BY FORESTEIRE THAT HE WAS PROTECTED FROM LIABILITY BY A CONDITIONAL PRIVILEGE
Foresteire also claims that as a public official, namely, the superintendent of schools, he has a conditional privilege with regard to school system matters. Foresteire states that because the allegedly defamatory statements discussed the performance of a former principal as well as other departmental issues that the privilege applied to him.
Statements made by a public official in the course of his or her official duties are conditionally privileged. ‘The conditional privilege ... is meant to allow public officials to speak freely on matters of public importance during the exercise of their official duties.” Mulgrew v. Taunton, 410 Mass. 631 (1991) (letter by chief of police to the town council responding to a request regarding the reinstatement of an officer was written as part of official duties and was therefore privileged). The privilege granted to public officials is conditional and is limited to official business. “In those cases in which we have held that an employer has a conditional privilege to make defamatory statements, the statements were published to a narrow group who shared an interest in the communication. In none of the cases did the employer publish the defamatory statements to a newspaper of general circulation.” Draghetti v. Chmielewski, 416 Mass. 808, 813-14 (1994) (where police chief gave information regarding the performance of an officer to a newspaper).
In this case, Foresteire caused allegedly defamatory statements to be published in a newspaper of general circulation. The general topic of the article was a personal lawsuit between Foresteire and Mitchell. This lawsuit was not brought by the school system through Foresteire in his official capacity as superintendent. For these reasons, the conditional privilege did not apply to Foresteire.
As Foresteire was not protected by a conditional privilege, we do not have to discuss any possible abuse of that privilege raised by Andreucci.
*43 V.FORESTEIRE’S CLAIM THAT THE STATEMENTS WERE NOT MADE WITH RECKLESS DISREGARD FOR THEIR FALSITY
Foresteire asserts that even if the statements were defamatory, Andreucci is a public figure who must prove actual malice.
When a defamation case involves a public figure, the plaintiff bears the burden of proving that the statements were made maliciously. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). A statement will be found to be malicious if it is published with either the knowledge that it was false or with a reckless disregard for its truth or falsity. Id. If, however, the plaintiff is a private person, then only negligence need be shown with regard to the statement. Stone v. Essex County Newspapers, 367 Mass. 849, 858 (1975).
The standard for determining if a person is a public figure is whether they put themselves out to the public with respect to that particular issue. Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974). “[T]hose classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.” Id. at 345. The question of whether a person is a public figure is a question of fact unless uncontested or stipulated to by both parties. Lyons v. New Mass Media Inc., 390 Mass. 51, 55 (1983).
A. Andreucci as a Public Figure
“Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in New York Times are present and the New York Times malice standards apply.” Stone v. Essex County Newspaper, supra, quoting Rosenblatt v. Baer 383 U.S. 75, 86 (1966); citing New York Times Co. v. Sullivan, supra.
In Milgroom v. New Group Boston, Inc., 412 Mass. 9, 10 (1992), a judge who had retired was found to be a public official with regards to her performance during her tenure as a judge. “No rule of repose exists to inhibit speech relating to the public career of a public figure so long as newsworthiness and public interest attach to events in such public career” Milgroom supra at 10, citing Time, Inc. v. Johnston, 448 F.2d 378, 381 (4th Cir. 1971).
Andreucci in this case is a retired elementary school principal. Undoubtedly, when Andreucci was employed as an elementary school principal, the public had an interest in his performance. Additionally, he would remain a public figure with regard to his performance as a principal even though he had retired. For that reason, it would seem, that Andreucci in this action was a public figure for which the New York Times standard applies.
However, this article was not about the performance of Andreucci as principal. The context of this article was a lawsuit between Foresteire and Mitchell. The overall point of the article was to discuss the dispute between those two parties. Foresteire brought Andreucci into the debate by claiming that Andreucci was the source of the information in Mitchell’s articles. The critical issue therefore becomes, whether Andreucci interjected himself into the debate or if he was brought into the controversy by Foresteire. Andreucci can only be considered a public figure with regard to this controversy if he put himself out to the public.
There is some circumstantial evidence as to the source of Mitchell’s articles and the various editorials. Andreucci denies having any involvement in their writing and publication. If Andreucci was the source of those articles and editorials, then Andreucci has put himself out to the public with regard to this issue and therefore, the New York Times standard applies. If Andreucci was not the source, then he will not be considered a public figure and only a negligence standard would apply. Whether Andreucci was the source of these editorials and articles is an issue of material fact which must be determined by the trier of fact in this case.
B. Whether Statements were made with Reckless Disregard for their Truth or Falsity
If Andreucci is found to be a public figure in this case, then he must prove that the allegedly defamatory statements were made either with knowledge of their falsity or with reckless disregard for their truth or falsity. New York Times Co. v. Sullivan, supra. Both whether Andreucci is a public figure and whether the statements were made maliciously with knowledge of their truth or falsity or with reckless disregard for their truth or falsity are disputed issues of material fact.
VI.CIVIL CONSPIRACY CLAIM
Genuine issues of material fact continue to exist with regard to this claim.
VII.CLAIM OF INVASION OF PRIVACY
Invasion of privacy protects from disclosure of information of a “highly personal or intimate nature.” Mulgrew v. Taunton, supra at 637; M.G.L. c. 214 §1B. “The notion of right of privacy is founded on the idea that individuals may hold close certain manuscripts, private letters, family photographs, or private conduct which is no business of the public and the publicizing of which is, therefore offensive.” Cefalu v. Globe Newspaper Co., 8 Mass.App.Ct. 71, 77 (1979). This does not apply when the public has a legitimate interest in the information. Mulgrew v. Taunton, supra. In this case, whether the public had an interest in the information depends upon whether Andreucci was involved in the particular controversy between Foresteire and Mitchell. *44 Andreucci’s role in this matter is a genuine issue of material fact which is disputed.
VIII. CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with “actual malice," i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true.
Hustler Maaazine v. Falwell, 485 U.S. 46, 56 (1987), citing New York Times, supra. For this reason, Foresteire claims that he should be granted summary judgment on Count V and VI of the amended complaint.
However, as has been previously discussed, whether Andreucci is a public figure or not is a material issue of disputed fact for the trier of fact to determine. If the trier of fact determines that Andreucci is a public figure, then he must prove that the statements were made with malice. However, if Andreucci is not a public figure, then the normal tort standards for intentional and negligent infliction of emotional distress would apply. For all of the above reasons, summary judgment is on Counts V and VI is inappropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Frederick F. Foresteire’s motion for summary judgment is DENIED.

The Everett Advocate is published by defendant Leader Publishing Co., Inc.